|  | **UNITED STATES DISTRICT COURT** |
|---|---|

UNITED STATES OF AMERICA,

\- vs –

JEFFREY ANDREWS,
CHAD BEENE,
ADAM BROSIUS, and
ROBERT SCHNEIDERMAN,

          Defendants.

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

Criminal No. 20-578 (JMV)

---

**DEFENDANT ADAM BROSIUS' BRIEF IN SUPPORT OF PRETRIAL MOTIONS**

---

## <u>RELEVANT BACKGROUND</u>

On July 10, 2020, Defendant Adam Brosius was charged along with three other individuals in a 15-count Indictment charging Conspiracy to Commit Healthcare Fraud, in violation of 18 U.S.C. § 1349 (Count One), four of six substantive counts of healthcare fraud, in violation of 18 U.S.C. §§ 1347 and 2 (Counts Two-Seven),[1] Conspiracy to Violate the Anti-Kickback Statute, in violation of 18 U.S.C. § 371 (Count Eight), and five of seven substantive counts of Payment of Kickbacks in Connection with a Federal Healthcare Program, in violation of 42 U.S.C. § 1320a-7b(b)(2)(B) and 18 U.S.C. § 2 (Counts Nine-Fifteen).[2]  On July 16, 2020, all Defendants entered pleas of not guilty to the counts in which they are charged.

The allegations underlying the charges in the Indictment relate to the operation of Main Avenue Pharmacy, Inc. ("MAP"), a subsidiary of Scripps America Inc. (identified in the

---

[1] Counts Two and Three are charged against Defendants Chad Beene and Robert Schneiderman only and Counts Four-Seven are charged against Defendants Jeff Andrews, Chad Beene and Brosius only.

[2] Counts Nine and Ten are charged against Defendants Beene and Schneiderman only and Counts Eleven-Fifteen are charged against Defendants Andrews, Beene and Brosius only.

Indictment as "Parent Company-1"), between approximately March 2014 and June 2016, although the substantive counts are sandwiched between May 1, 2015 and January 27, 2016.  MAP was a mail-order pharmacy that dispensed compounded medications (Indictment, Count One ¶ 1(e)). MAP used outside marketing companies to "direct prescriptions for compounded medications for Beneficiaries to Main Avenue Pharmacy" which, "either directly or indirectly through [Defendant Brosius' company] Pharma Sales [Group, Inc.], paid the Marketing Companies a percentage of the reimbursement amount that Main Avenue Pharmacy received from health care benefit programs." Indictment, Count One ¶ 1(m).

Count One of the Indictment alleges that Defendants conspired to obtain money from private insurance companies and two federal healthcare programs – TRICARE and Medicare – "by submitting and causing the submission of insurance claims for medically unnecessary—but exorbitantly priced—compounded medications." Indictment, Count One ¶ 3.  According to the Indictment, the conspiracy was accomplished by multiple manners and means:

1) In or about 2014, MAP entered into a marketing agreement with Pharma Sales under which Pharma Sales was paid on a commission basis for generating prescriptions for MAP, Indictment, Count One ¶ 7, and Pharma Sales, in turn, entered into agreements with Marketing Companies 1-3, which were paid on a commission basis to generate sales for MAP, Indictment, Count One ¶ 8;

2) Defendants created prescription pads which contained specific compounded medications for physicians to choose from, and conducted "test billing" to determine how much a healthcare benefit program would reimburse for a particular formula, Indictment, Count One ¶¶ 9-14;

3) Marketing Companies 1-3 – without the knowledge of Defendants – paid doctors to authorize prescriptions without ever having examined a patient, Indictment, Count One ¶ 13;

4) Defendant Brosius instructed MAP employees to confirm that Beneficiaries "would receive refills of the same compounded medication," and directed MAP employees to persuade

Beneficiaries to keep medications prescribed by doctors of whom the Beneficiaries had never heard, Indictment, Count One ¶¶ 16-17; and

5)    Defendant Brosius would, at times, direct MAP employees to waive Beneficiaries' co-payments for the compounded medications and directed MAP employees to obtain money orders to make it appear as if the Beneficiaries had paid the co-pays, Indictment, Count One ¶ 18.

Counts Two through Seven allege six claims for payment submitted by MAP to Medicare, Commercial Payer-1, or Commercial Payer-2, on behalf of six unidentified individuals.

Count Eight of the Indictment alleges that Defendants conspired to pay kickbacks and bribes *to the Marketing Companies* in exchange for referring prescriptions to MAP. *See* Indictment, Count Eight ¶ 3. The entire premise of the government's allegation is that the commission payment arrangement between MAP and Pharma Sales, and between Pharma Sales and the Marketing Companies, constituted kickbacks. The government also alleges that the Marketing Companies paid actual kickbacks to "physicians to induce them to procure and refer compounded medications prescriptions for TRICARE and Medicare Beneficiaries," Indictment, Count Eight ¶ 10, but there is no allegation (and there is, in fact, no evidence) that any Defendant knew (or even had reason to know) that actual kickbacks were being paid by the Marketing Companies to doctors, or participated in that conduct.

Commission compensation agreements may not be protected by a safe harbor, *see* 42 C.F.R. § 1001.952(d), but are not illegal per se and can be permissible even when they do not meet the safe harbor requirements, *see. e.g.,* OIG Advisory Op. No. 98-10 (approving percentage commission fee arrangement); Advisory Op. No. 98-15 (same); Advisory Op. No. 99-3 (same). Moreover, to establish guilt, the government is obligated to prove that Defendant acted "willfully" to defraud or to pay kickbacks. *See United States v. Nora*, 988 F.3d 823, 829-34 (5th Cir. 2021)

(reversing conspiracy to commit healthcare fraud and conspiracy to pay kickbacks convictions in the absence of sufficient proof of willfulness). In this regard, two facts are important: (1) Prior to working at MAP, Adam Brosius had zero experience in the pharmaceutical industry, and (2) the government is aware, but fails to allege in the Indictment and, presumably, failed to present to the grand jury, that MAP and Defendant Brosius, in fact, acted upon the advice of counsel throughout the relevant time period. Specifically, there were no fewer than three attorneys advising MAP: (1) Brian Ettinger, who was Chairman of the Board during the relevant time period, (2) Rick Fox, who was the company's in-house legal counsel, and (3) Chris Parella, an outside healthcare law expert. The commission agreements that the government alleges were illegal were reviewed and, ultimately, approved by these attorneys. In particular, guidance provided by Mr. Parella regarding compliance with the federal Anti-kickback Statute was followed. And, as mentioned, if the Marketing Companies were paying actual kickbacks to referring physicians, the Indictment does not allege that such conduct was known by any Defendant; in fact, it was not.

## <u>ARGUMENT</u>

### I.  THE HEALTHCARE CONSPIRACY CHARGED IN COUNT ONE MUST BE DISMISSED BECAUSE IT IS DUPLICITOUS.

Count One of the Indictment alleges two conspiracies in a single count.  Specifically, Count One charges as one offense: 1) an agreement by Defendants to get rich by paying kickbacks to marketers to generate prescriptions (*i.e.*, the allegations also charged in Count Eight as an Anti-Kickback Act conspiracy), and 2) an agreement by Defendant Brosius and one or more unnamed MAP employees to waive co-pays, Indictment, Count One ¶ 8.  These two conspiracies are separate offenses that should have been charged in separate counts.  Because Count One is duplicitous, it must be dismissed.

"Duplicity is the improper combining of separate offenses into a single count."  *United States v. Steiner*, 847 F.3d 103, 114 (3d Cir. 2017); *see also* Fed. R. Crim. P. 8(a); *United States v. Haddy*, 134 F.3d 542, 548 (3d Cir. 1998); *United States v. Hixon*, 987 F.2d 1261, 1265 (6th Cir. 1993); *United States v. Hinton*, 127 F. Supp.2d 548 (D.N.J. 2000). The purposes of the prohibition against duplicitous indictments include:

(1)  avoiding the uncertainty of whether a general verdict of guilty conceals a finding of guilty as to one crime and a finding of not guilty as to another;

(2)  avoiding the risk that the jurors may not have been unanimous as to any one of the crimes charged;

(3)  assuring the defendant adequate notice;

(4)  providing the basis for appropriate sentencing; and

(5)  protecting against double jeopardy in a subsequent prosecution.

*United States v. Root*, 585 F.3d 145, 154 (3d Cir. 2009); *accord United States v. Starks*, 515 F.2d 112, 116-17 (3d Cir. 1975) ("One vice of duplicity is that a general verdict for a defendant on that count does not reveal whether the jury found him not guilty of one crime or not guilty of both....

Another vice of duplicity is that a general verdict of guilty does not disclose whether the jury found the defendant guilty of one crime or of both.  Conceivably, this could prejudice the defendant in sentencing and in obtaining appellate review.  A third vice of duplicity is that it may prejudice the defendant with respect to evidentiary rulings during the trial, since evidence admissible on one offense might be inadmissible on the other."); *United States v. Beros*, 833 F.2d 455, 462 (3d Cir. 1987) (holding that duplicitous indictments are invalid because they may lead to guilty verdicts where twelve jurors "were not unanimous in their assessment of which act supported the [guilty] verdict.").

The crux of a conspiracy offense is the underlying agreement.  *United States v. Braverman*, 317 U.S. 49, 52 (1942) ("Whether the object of a single agreement is to commit one or many crimes, it is in either case that agreement which constitutes the conspiracy which the statute punishes.").  The federal courts apply a "totality of the circumstances" test to determine whether a conspiracy count charges two agreements or only one.  *United States v. Rigas*, 605 F.3d 194, 212 (3d Cir. 2010); *United States v. Smith*, 82 F.3d 1261, 1267 (3d Cir. 1996); *United States v. Becker*, 892 F.2d 265, 268 (3d Cir. 1989).  Courts evaluate three factors to determine "whether a group of individuals engaged in a single conspiracy or multiple conspiracies: ... (1) 'whether there was a common goal among the conspirators'; (2) 'whether the agreement contemplated bringing to pass a continuous result that will not continue without the continuous cooperation of the conspirators'; and (3) 'the extent to which the participants overlap in the various dealings.'" *United States v. Kemp*, 500 F.3d 257, 287 (3d Cir. 2007) (*quoting United States v. Kelly*, 892 F.2d 255, 259 (3d Cir. 1989)).  This list is non-exhaustive and "different conspiracies may warrant emphasizing different factors." *Smith*, 82 F.3d at 1267. In assessing the totality of the circumstances, the court

must "assure that the substance of the matter controls and not the grand jury's characterization of it." *Smith*, 82 F.3d at 1267.

Here, the totality of the circumstances indicates that Count One charges distinct and separate offenses. Simply stated, the alleged waiving of copays bears no relationship to the remainder of the conspiratorial conduct charged in Count One and should have been charged separately (if at all).[3] Specifically, Adam Brosius alone is charged with having waived (a limited number of) patients' copays. Although not alleged in the Indictment, the conduct occurred only in April/May 2015 and did not continue through any substantial portion of the conspiratorial period alleged in the Indictment. The amount of waived copays was approximately only $1,500.00, for prescriptions costing under $100,000. Although two of the other Defendants are alleged to have had knowledge of the waived copays, none of the other Defendants are alleged to have actually participated in that conduct. To the contrary, the Indictment alleges that Defendant Brosius directed a MAP employee to use company funds to purchase money orders to cover the copays.

Moreover, the goals of the two agreements were different. That the Indictment alleges that the "objective" of these two schemes was to enrich the participants is not relevant to this analysis. *Rigas*, 605 F.3d at 209, n.12 (specifically rejecting including objects of the charged conspiracies in the totality of the circumstances test) (*citing United States v. Liotard*, 817 F.2d 1074, 1078 (3d

---

[3] The OIG has confirmed that it will not enforce the Civil Money Penalties Law ("CMPL") and the Anti-Kickback Statute against providers who waive copays or deductibles due to genuine financial hardship. The CMPL specifically excludes from the definition of "remuneration" the waiver of copays and deductibles if all of the following conditions are satisfied: (i) the waiver is not offered as part of any advertisement or solicitation; (ii) the person does not routinely waive coinsurance or deductible amounts; and (iii) the person (I) waives the coinsurance and deductible amounts after determining in good faith that the individual is in financial need; or (II) fails to collect coinsurance or deductible amounts after making reasonable collection efforts. *See* 42 USC 1320a-7a(i); https://oig.hhs.gov/documents/advisory-opinions/735/AO-17-02.pdf. It is expected that the evidence in this case will confirm that these conditions were satisfied.

Cir. 1987)).   Because the object of much criminal activity is to enrich the participants, the underlying purpose of the alleged criminal conspiracy must be examined at a more particular level. *See United States v. Greenidge*, 495 F.3d 85, 93 (3d Cir. 2007) (describing common goals as "to make money by depositing stolen and altered corporate checks into business accounts"); *Kelly*, 892 F.2d at 259 (describing common goal as "to make money selling speed"). Here, the underlying purpose of the alleged criminal activity in the first conspiracy was to pay kickbacks to marketers to generate medically unnecessary prescriptions.   The underlying purpose of the alleged criminal activity in the second conspiracy was to circumvent the regulatory co-pay requirement by paying patients' co-pays using company funds.   The temporal scope and financial magnitude of the kickback conspiracy dwarfs the co-pay conspiracy.   One has nothing to do with the other.

These factors demonstrate that, under the totality of the circumstances, the government has charged two separate agreements in a single conspiracy count.   As mentioned above, the evidence in this case will be that the manner in which MAP compensated outside marketers was put in place with the advice of counsel.   Hence, there is a very real risk that Defendant Brosius will be found guilty of the massive conspiracy alleged in Count One based upon underlying conduct that is different in scope and kind, and even though 12 jurors do not agree on the underlying conspiratorial agreement. *See United States v. Moyer*, 674 F.3d 192, 204-05 (3d Cir. 2012) ("Duplicity is the joining of two or more distinct offenses in a single count, so that a general verdict does not reveal exactly which crimes the jury found the defendant had committed," and one consideration of the duplicity doctrine is "avoiding risk that the jury was not unanimous as to any one of the crimes charged").   Moreover, even if the jury were to unanimously agree that Defendants had conspired to commit the co-pay waiver fraud, Defendants would then be subject at sentencing to a loss calculation that included the far more expansive loss allegedly associated with the kickback

scheme.   These are the exact risks of unfairness that the duplicity doctrine is designed to avoid.

For these reasons, Count One must be dismissed.

## II.   THE CONSPIRACY CHARGED IN COUNT EIGHT OF THE INDICTMENT MUST BE DISMISSED BECAUSE IT IS DUPLICITOUS.

Count Eight of the Indictment, too, alleges two conspiracies in a single count.  Specifically, Count Eight charges as one offense: 1) an agreement among Defendants to violate the federal Anti-Kickback Statute by entering into commission-based marketing agreements, and 2) the separate agreement between individual Marketing Companies and physicians to pay/receive kickbacks in exchange for prescriptions.  These two conspiracies are separate offenses that should have been charged in separate counts.  Because Count Two is duplicitous, it must be dismissed.

Count Eight incorporates by reference Paragraphs 1 and 3-19 of Count One of the Indictment even though some of those allegations have no relationship to the goal of the alleged conspiracy to violate the Anti-Kickback statute.  *See*, *e.g.*, Count One ¶ 18 (alleging the unlawful waiving of copays).  That goal was "to profit by paying and causing the payment of bribes and kickbacks to the co-conspirator Marketing Companies in exchange for the Marketing Companies obtaining prescriptions for highly expensive and medically unnecessary compounded medications that were to be filled by Main Avenue Pharmacy ..." Indictment, Count Eight ¶ 3.  Paragraph 10 of Count Eight alleges, however, that "[t]he co-conspirator Marketing Companies themselves, in turn, also paid or caused to be paid, directly and indirectly, kickbacks and bribes to the Telemedicine Companies and their physicians to induce them to procure and refer compounded prescriptions for TRICARE and Medicare Beneficiaries."  That is, Count Eight alleges a conspiracy to pay kickbacks through commission compensation agreements with the Marketing Companies, and also alleges a separate conspiracy between the Marketing Companies and the physicians to pay/receive actual kickbacks.

These are two different agreements and, hence, two different conspiracies.  Indeed, there is no allegation (and no evidence) that any Defendant knew that individual marketers were paying

actual kickbacks to physicians, or participated in that conduct, and there are no substantive counts in the Indictment charging these Defendants with the payment of even a single actual kickback to a physician.  Hence, if the government seeks to hold these Defendants responsible for that conduct, it should have been charged as a separate offense that Defendants could defend without risk of the jury's being confused by its amalgamation with the entirely different alleged conspiracy to get rich through commission fee agreements.  Allowing these two offenses to be charged as a single conspiracy poses the same risks as those set forth above with respect to Count One, including that the jury may convict Defendants of conspiracy based upon conduct which they did not participate and, then, expose them to an aggravated range of punishment at sentencing based upon conduct for which they are not responsible.  For these reasons, Count Eight must be dismissed.

### III.   THE COURT SHOULD GRANT A BILL OF PARTICULARS TO CLARIFY CERTAIN VAGUE ALLEGATIONS IN THE INDICTMENT.

Federal Rule of Criminal Procedure 7(f) provides that a court may direct the government to provide an accused with a bill of particulars when necessary to clarify vague allegations contained in the charging instrument.  The purpose of a bill of particulars is to supplement an indictment, thereby enabling a criminal defendant to adequately prepare his defense, to avoid unfair surprise at trial, and to protect himself against a second prosecution for an inadequately described offense.  *United States v. Adams*, 759 F.2d 1099, 1113 (3d Cir. 1985); *United States v. Addonizio*, 451 F.2d 49, 63-64 (3d Cir. 1971).  *See also United States v. Bortnovsky*, 820 F.2d 572, 575 (2d Cir. 1987) (holding that district court erred in refusing to grant bill of particulars which was vital to defendants' understanding of charges against them and to their preparation of a defense).  Although a defendant is not entitled to wholesale discovery of the government's case, if a defendant seeks legitimate information, his request for a bill of particulars may not be denied merely because providing the missing information would divulge details of the government's evidence or because the indictment is in other respects sufficiently detailed.  *Addonizio*, 451 F.2d at 64 n.16.  In this regard, the granting of bills of particulars is particularly appropriate given that Rule 7(f) was specifically amended "to encourage a more liberal attitude by courts towards bills of particulars."  *United States v. Rosa*, 891 F.2d 1063, 1066 (3d Cir. 1989) (bills of particulars required "whenever an indictment's failure to provide factual or legal information significantly impairs the defendant's ability to prepare his defense or is likely to lead to prejudicial surprise at trial").

*First*, Defendant moves for a bill of particulars identifying the six "Individuals" listed in Counts Two through Seven, as well as the "Commercial Payers" associated with the claims alleged in Counts Three through Five.  Obviously, the claims underlying the substantive counts of the

Indictment are critically important inasmuch as the government must prove them beyond a reasonable doubt and, as important, defense counsel must defend against them.  Yet, counsel has been unable to discern the identities of these individuals, or the insurance companies associated with them, from the discovery provided by the government.  Such information is necessary to prepare a defense. *United States v. Salko*, No. 1:07-CR-0286, 2008 WL 4006747, at *11 (M.D. Pa. Aug. 26, 2008) (ordering the government in healthcare fraud prosecution "to file a bill of particulars as to which bills were false, with the dates and amounts of the reimbursement").

This request seeks "only the minimum amount of information necessary to permit the defendant to conduct his own investigation" of the charges posed against him, *United States v. Smith*, 776 F.2d 1104, 1111 (3d Cir. 1985).  No matter how detailed an indictment may be, a criminal defendant cannot be compelled to guess at the criminal conduct with which he has been charged.  *See United States v. Davidoff*, 845 F.2d 1151, 1154 (2d Cir. 1988) (reversing conviction where government failed to provide defendant prior to trial with particulars of specific companies he was charged in indictment with having extorted); *United States v. Bortnovsky*, 820 F.2d 572, 574-75 (2d Cir. 1987) ("We conclude that appellants were hindered in preparing their defense by the district court's failure to compel the Government to reveal crucial information ... Appellants were forced to explain the events surrounding eight actual burglaries and to confront numerous documents unrelated to the charges pending.  In effect, the burden of proof impermissibly was shifted to appellants.").  Yet, in the absence of information identifying the specific claims for payment the submission of which Defendants are alleged to have caused, and the insurance companies alleged to have paid those claims, Defendants will be unable to fully prepare a defense to Counts Two through Seven of the Indictment in advance of trial.  *See Hsia*, 24 F. Supp.2d at 32 (ordering "a bill of particulars disclosing how Ms. Hsia is alleged to have caused each of the false

- 13 -

statements to be made"); *United States v. Cole*, 717 F. Supp. 309, 316-17 (E.D. Pa. 1989) (directing government to particularize allegations in indictment to inform defendant of precise unlawful conduct charged against him); *United States v. Fischbach & Moore, Inc.*, 576 F. Supp. 1384, 1389 (W.D. Pa. 1983) (directing the government to identify which of 150 contracts bid upon were alleged to be the subject of conspiracy charge). Therefore, Defendant's request for a bill of particulars identifying the specific claims for payment, and insurance company payors, at issue in substantive Counts Two through Seven, should be granted.

*Second*, Count One and Count Eight of the Indictment allege that Defendants are responsible for having conspired to submit for payment medically unnecessary prescriptions and, in particular, prescriptions obtained by way of actual kickbacks paid by third-party marketers to physicians. It is impossible to discern from the Indictment or the discovery which specific claims for payment the government considers to have been medically unnecessary and which prescriptions the government alleges were obtained by way of actual kickbacks to prescribing physicians, who paid the kickbacks, and who received them. These particulars are critical to the preparation of a defense and should be disclosed by the government.

In like circumstances – *i.e.*, complex fraud cases involving a complicated regulatory scheme, multi-faceted wrongdoing alleged in the indictment, multi-year period of alleged misconduct, and tens of thousands pages of discovery – federal courts have required the government to provide additional information in a bill of particulars so that defense counsel could prepare a defense. For example, in *United States v. Forthun*, No. CR 16-339 (MJD/FLN), 2017 WL 11483918 (D. Minn. Sept. 8, 2017), *aff'd*, 2017 WL 4232554 (D. Minn. Sept. 25, 2017), the district court granted the defendant's motion for a bill of particulars identifying with more specificity the alleged medically unnecessary services referenced in the indictment:

> The Indictment alleges that the schemes to defraud with which each defendant is charged, included submitting claims for medically unnecessary chiropractic services, and for chiropractic services that were not provided. The Court concludes that Forthun is entitled to know the identity, by name, of the patients the Government intends to prove at trial received such medically unnecessary chiropractic services or for whom claims were submitted for services that were not provided. The motion to dismiss the Indictment or for a Bill of Particulars is **GRANTED** to the extent that the Government must identify by name each such patient.

*Id.* at *1. Similarly, in *United States v. Vasquez-Ruiz*, 136 F. Supp. 2d 941 (N.D. Ill. 2001), the court ordered the government to provide a bill of particulars so that the defendant could prepare his defense against allegations of medically unnecessary tests for patients;

> .... In considering whether to require a bill of particulars, the court may consider the complexity of the charges, the clarity of the indictment, and the degree of discovery available to the defense absent a bill of particulars.
>
> The charges in this case are complex. Defendant, a practicing physician, is charged with seven counts of mail fraud in violation of 18 U.S.C. § 1341 and eighteen counts of health care fraud in violation of 18 U.S.C. § 1347. He is alleged to have conducted a scheme that involved ordering medically unnecessary tests for patients, making the patients believe they needed the tests, making false entries in the patients' records to justify the tests, and submitting over $400,000 in fraudulent bills to insurance companies. The scheme is claimed to have covered a period of three and one-half years.
>
> The indictment identifies a wide variety of types of allegedly unnecessary tests that defendant ordered, including ultrasounds, thyroid tests, heart tests, chest x-rays, and nerve conduction tests. It describes these only in generic terms, however; there is no specification of the particular tests claimed to be unnecessary. The indictment also identifies certain bills claimed to be false which were sent in furtherance of the scheme. It does not purport, however, to identify the entire universe of false billings, nor does it identify the patients claimed to have been subjected to unnecessary tests (except to the extent they are identified in the handful of false billings listed in the indictment).
>
> The government has produced some 17,000 pages of documents to defendant. It has also provided early disclosure of witness statements made in the course of its investigation, as well as charts summarizing insurance data. It has described, at least in outline form, its theory of the case. And it has provided, or will provide, reports from experts who evidently will

testify concerning the medical necessity for the tests that defendant allegedly ordered.

> In view of the amount of early pretrial discovery that has been provided beyond the requirements of Rule 16 (namely the witness statements and charts), most of defendant's requests go beyond what is necessary and appropriate. However, the Court believes that defendant is entitled to know prior to trial certain basic matters: the identity of the patient-victims of the alleged offenses, the records claimed to include false entries, and any allegedly fraudulent bills to insurers. *The defense should not be left to its own devices and a sifting of the voluminous materials that have been provided in order to divine the particulars of these critical allegations, which have not yet been disclosed.*

*Id.* at 942-43 (emphasis added).

Similarly, in *United States v. Davis*, No. CRIM. A. H-14-171S-12, 2014 WL 6679199 (S.D. Tex. Nov. 25, 2014), the court required the government to provide particulars regarding the Medicare beneficiaries whose claims were tainted by alleged kickbacks:

> The Government asserts that the superseding indictment alleges that Davis received kickbacks in exchange for referring Medicare beneficiaries who were clients of her personal care home, which is a clearly finite number of beneficiaries. Dkt. 290. The Government further contends that it made available to Davis all of the evidence seized, including the bed lease contracts and all supporting documents. While it is possible for the Government to fulfill its obligations by providing materials, if the materials are voluminous, then documents alone are not a substitute for disclosure of the alleged fraudulent transactions. Davis's motion for a bill of particulars is GRANTED to the extent she requests the names of the Medicare beneficiaries whose claims were tainted by any alleged illegal kickbacks.

*Id.* at *4. *See also United States v. Nachamie*, 91 F. Supp. 2d 565 (S.D.N.Y. 2000) (granting bill of particulars in health care fraud prosecution where the government provided significant discovery relating to 2,000 Medicare claims, but none of the claims were "identified by defendant, type of falsity, claim number and date").[4] And, in *United States v. McCarthy*, 292 F. Supp. 937,

---

[4] *See generally United States v. Barnwal*, No. 18-cr-20439, 2019 U.S. Dist. LEXIS 57181, at *15 (E.D. Mich. Apr. 3, 2019) (granting bill of particular where "the Government provides no authority for the proposition that general allegations of criminal activity being committed during a time period is sufficient to provide notice of the crimes charged where no specific conduct has been

940–941 (S.D.N.Y.1968), the court ordered the government to provide the defense with particulars regarding the names of those who, the government alleged, paid illegal bribes. *See also United States v. Dean*, 266 F. Supp. 159, 160 (S.D.N.Y.1966) (ordering government in bribery case to provide defendants with bill of particulars as to four categories of information: (1) the approximate date and time of day when the defendant received the bribe; (2) the person who gave the defendant the bribe; (3) the place where the defendant received the bribe; and (4) whether the payment was made by cash or check or both).

Here, as well, the government should be required to identify: (a) those claims for payment it claims were false because they were for medically unnecessary prescriptions, including claims not charged as substantive counts in the Indictment, *see United States v. Nekritin*, No. 10-CR-491 S-1 KAM, 2011 WL 1674799, at *8 (E.D.N.Y. May 3, 2011) (ordering the government in healthcare fraud conspiracy prosecution to provide defendants with particulars regarding alleged false claims submitted outside the limited time frame of the substantive counts of the indictment because "[w]ithout it, the defendants are left to determine which claims for which beneficiaries are alleged to form the basis of the health care fraud conspiracy, and to defend legitimate claims unrelated to the conspiracy charge, which would impermissibly shift the burden of proof to the

---

identified and no specific discovery materials have been produced."); *United States v. Arnold*, No. 3:16-00117, 2016 U.S. Dist. LEXIS 136003, at *6 (M.D. Tenn. Sep. 30, 2016) (granting bill of particulars "for more specificity regarding the money and property obtained from Rutherford County, and the transaction or series of transactions of Rutherford County involving $5,000 or more"); *United States v. Valdez-Morales*, No. 3:15-CR-56, 2016 U.S. Dist. LEXIS 27731, at *10-11 (E.D. Tenn. Mar. 4, 2016) (ordering the government "particularize which federal income tax returns it alleges are false or fraudulent" where "not every tax return prepared at Defendant Blair's business was fraudulent," because defendants should not be required to "guess which of the tax returns filed over a two and one-half year period are the ones the Government contends are false."); *United States v. Alegria*, No. 90 CR. 0450 (RWS), 1991 WL 33284, at *2-4 (S.D.N.Y. Mar. 7, 1991) (granting bill of particulars as to the "VIN number[s] of ... additional cars" not identified in indictment charging conspiracy to alter vehicle identification numbers).

defendants"), and (b) those claims for payment the government alleges were the result of prescriptions obtained by way of an actual kickback from a marketer to a physician, and the identities of those marketers and physicians paying/receiving kickbacks, *see United States v. Lino*, No. 00 CR. 632 (WHP), 2001 WL 8356 (S.D.N.Y. Jan. 2, 2001) (granting bill of particulars where defendants lacked information concerning the identity of the union officials they allegedly bribed, the pension funds the union officials served, and the amounts of the bribes the union officials were paid); *United States v. Murgio*, 209 F. Supp. 3d 698, 723-24 (S.D.N.Y. 2016) (granting bill of particulars as to "dates, locations, and amounts of any bribes" that were paid). None of this information is readily discernable from the discovery received from the government. *See Bortnovsky*, 820 F.2d at 575 ("The Government did not fulfill its obligation [to inform defendants of the charges] merely by providing mountains of documents to defense counsel who were left unguided as to which documents would be proven falsified or which of some fifteen burglaries would be demonstrated to be staged.").

*Third*, Both Count One and Count Eight of the Indictment – the conspiracy counts – allege that Defendant conspired with each other and unnamed "others." The Court should grant a bill of particulars directing the government to identify those "others" with whom Defendants are alleged to have conspired, at least to the extent the government will seek to introduce any statements from such "others" as co-conspirator statements. Without knowing the identity of these "others" referred to in the indictment, Defendants will be unable to investigate fully the circumstances of the Indictment, prepare potential objections under Federal Rule of Evidence 801(d)(2)(E), or protect themselves against a second prosecution for the same offense, naming different coconspirators. In similar cases, and for these very same reasons, courts have routinely directed the government to provide bills of particulars identifying those "others" with whom a defendant is alleged to have

conspired.  *See United States v. Vastola*, 670 F. Supp. 1244, 1269-70 (D.N.J. 1987) (ordering the government to provide the defendant with the names of all coconspirators or participants in the charged offenses).  *See also United States v. Anderson*, 31 F. Supp.2d 933, 938 (D. Kan. 1998) (directing the government to disclose the identities of unindicted coconspirators); *United States v. Trie*, 21 F. Supp.2d 7, 22 (D.D.C. 1998) (same); *United States v. Oakar*, 924 F. Supp. 232, 246 (D.D.C. 1996) (holding that the defendant is entitled to bill of particulars setting forth identities of unnamed coconspirators), *rev'd in part on other grounds*, 111 F.3d 146 (D.C. Cir. 1997); *United States v. Hsia*, 24 F. Supp.2d 14, 31 (D.D.C. 1998) (directing government to identify individuals who performed allegedly unlawful acts on behalf of corporation identified in indictment); *United States v. Strawberry*, 892 F. Supp. 519, 527 (S.D.N.Y. 1995) (directing the government to provide the defendant with a bill of particulars naming all unnamed coconspirators); *United States v. Cutolo*, 861 F. Supp. 1142, 1149 (E.D.N.Y. 1994) (directing the government to provide the defendant with bill of particulars identifying "others" alleged in indictment to have conspired with defendant); *United States v. Allocco*, 801 F. Supp. 1000, 1003 (E.D.N.Y. 1992) (requiring government to provide defendant with bill of particulars listing names of "the others" referred to in indictment), *aff'd*, 29 F.3d 620 (2d Cir. 1994); *United States v. Lonzo*, 793 F. Supp. 57, 60 (N.D.N.Y. 1992) (directing government to provide defendant with names of unindicted coconspirators); *United States v. Recognition Equipment, Inc.*, 711 F. Supp. 1, 10 (D.D.C. 1989) (directing government to identify individuals alleged to have received unlawful gratuities); *United States v. McDonnell*, 696 F. Supp. 356, 359-60 (N.D. Ill. 1988) (directing the government to provide bill of particulars identifying "the attorney from whom the defendant allegedly accepted the bribes or the name of the case or cases with which that attorney was affiliated," in the absence of which the defendant could "only hazard to guess" at their identity); *United States v. Rogers*, 617

F. Supp. 1024, 1028-29 (D. Colo. 1985) (holding that government must identify undisclosed and unidentified coconspirators, aiders and abettors, and other individuals involved in the criminal acts charged); *United States v. Ahmad*, 53 F.R.D. 194, 199 (M.D. Pa. 1971) (directing government to furnish defendant with names and addresses of alleged co-conspirators known to the government). Accordingly, here as well, this Court should order the government to provide Defendants with a bill of particulars identifying the "others" with whom they are alleged to have conspired.

## IV.     THE COURT SHOULD STRIKE CERTAIN PREJUDICIAL ALLEGATIONS.

Federal Rule of Criminal Procedure 7(d) authorizes the Court to strike prejudicial "surplusage" from an indictment. *United States v. Poore*, 594 F.2d 39, 41 (4th Cir. 1979) (explaining that the purpose of Rule 7(d) is "to protect a defendant against prejudicial allegations that are neither relevant nor material to the charges made in an indictment, or not essential to the charge, or unnecessary, or inflammatory"). Surplusage is language which is not relevant to the crimes charged in the indictment and which could allow the jury to draw improper inferences. *United States v. Gatto*, 746 F. Supp. 432, 455 (D.N.J. 1990), *rev'd on other grounds*, 924 F.2d 491 (3d Cir. 1991). *See also United States v. Marshall*, 985 F.2d 901, 905 (7th Cir. 1993) (surplusage is language which is immaterial, irrelevant or prejudicial). Where indictments have contained language which is irrelevant to the charges, or inflammatory and prejudicial, courts have not hesitated to strike the excess language. *See, e.g., Gatto*, 746 F. Supp. at 457 (striking phrase "and others" as it implied broader scope of illegal activity than alleged in the indictment); *Vastola*, 670 F. Supp. at 1255 (striking irrelevant, vague language, which may have implied guilt by association or insinuated facts not alleged in the indictment). *See also United States v. McGuire*, 744 F.2d 1197, 1206 (6th Cir. 1984) (holding that district court properly deleted surplusage to avoid confusing jury); *United States v. Espy*, 989 F. Supp. 17, 35 (D.D.C. 1997) (striking phrase "and others"); *United States v. Whitehorn*, 710 F. Supp. 803, 819 (D.D.C. 1989) (striking surplusage from overt actions section of conspiracy indictment); *United States v. Mandel*, 415 F. Supp. 997, 1009 (D. Md. 1976) (striking surplusage that had prejudicial potential for confusing jury).

Here, the Indictment includes several allegations that are prejudicial and inflammatory and which, therefore, should be stricken from the Indictment so that the government is not permitted to prove up those allegations.  In particular, the Indictment alleges in Paragraphs 1(r) & (s):

r.      Compounded drugs *were not approved* by the Food and Drug Administration ("FDA") because the FDA did not verify the safety, potency, effectiveness, or manufacturing quality of compounded drugs.

s.      Generally, compounded drugs could be prescribed by a physician when an FDA-approved drug did not meet the health needs of a particular patient.....

These allegations are prejudicial because this is not a case about safe or unsafe drugs, and their approval by the FDA is not relevant to the allegations in this case.  *United States v. Chikvashvili*, 114 F. Supp. 3d 300, 305 (D. Md. 2015) (striking allegation in healthcare fraud conspiracy prosecution that offense conduct may have resulted in death where such conduct was not alleged as an object of the conspiracy, rather, "[i]t is surplusage that does not describe an element of the offense otherwise charged"), *aff'd,* 859 F.3d 285 (4th Cir. 2017).

Moreover, neither allegation is truthful.  It is not true that compounded drugs were not approved by the FDA because their safety was not verified; rather, they are not approved because, as a matter of law, compounded drugs are largely exempt from FDA regulation (*i.e.*, so long as compounding is for an identified individual patient). *See* FDA, "Prescription Requirement Under Section 503A of the Federal Food, Drug, and Cosmetic Act: Guidance for Industry (Dec. 2016) ("Compounded drug products are not FDA-approved, which means they have not undergone FDA premarket review for safety, effectiveness, and quality. In addition, licensed pharmacists and licensed physicians who compound drug products in accordance with section 503A are not subject to CGMP requirements.") (available at https://www.fda.gov/media/97347/download).  Also, it simply is not true that a physician could prescribe a compounded drug only when an FDA-approved drug did not meet the health needs of a particular patient; rather, a physician can prescribe any drug for any purpose that the physician – in his or her medical judgment – determines might be beneficial for the patient. *Id.*  Allowing these allegations to remain in the Indictment and, worse, allowing the government to attempt to prove them at trial *because they are alleged in the*

*Indictment*, will mislead, inflame and confuse the jury about the issues actually in dispute in this prosecution. *cf. United States v. El-Silimy*, 228 F.R.D. 52, 59 (D. Me. 2005) (denying motion to strike surplusage where challenged allegation was relevant to the government's case). Therefore, the Court should strike these allegations from the Indictment. *United States v. Gerlay*, No. 3:09-CR-085-JWS-JDR, 2009 WL 3872143, at *1-*2 (D. Alaska Nov. 17, 2009) (striking allegations that were not necessary to prove the healthcare fraud charged in the Indictment and which posed a risk of unfair prejudice or confusion to the jury); *United States v. Rubin/Chambers, Dunhill Ins. Servs.*, 798 F. Supp. 2d 517, 524 (S.D.N.Y. 2011) (striking portion of indictment that did not apply to the offense conduct actually charged).

In addition, as discussed above, Paragraph 13 of Count One, and Paragraph 10 of Count Eight, allege that certain individual marketers paid actual kickbacks to physicians in exchange for writing prescriptions. There is no allegation and, indeed, no evidence whatsoever that Defendants knew of or encouraged the payment of actual kickbacks to doctors in exchange for prescriptions. If there was a conspiracy among the charged Defendants to commit healthcare fraud and/or to violate the federal Anti-Kickback Statute, such third-party conduct (*i.e.*, the payment of actual kickbacks) was not a part of it. The allegation in the Indictment of actual kickbacks being paid is, and the introduction of evidence of such payments would be, unfairly prejudicial to the charged Defendants, who were not party to such conduct. Moreover, evidence of actual kickbacks will confuse the jury with respect to the government's actual allegations in this case, specifically, that the commission fee agreements with marketers constituted an illegal kickback. Consequently, if the Court declines to dismiss Counts One and Eight on duplicity grounds, these allegations, as well, must be stricken from the Indictment.

All of these allegations are prejudicial because they unfairly suggest to the jury that Defendants engaged in criminal conduct broader than that actually alleged in the Indictment.  As such, these allegations run afoul of the admonition that "[a]nything in the indictment that allows the jury to infer involvement with uncharged crimes ... is improper."  *Vastola*, 670 F. Supp. at 1255.  Accordingly, the Court should strike these allegations from the Indictment.

## V.      THE COURT SHOULD ORDER PROMPT DISCLOSURE OF EVIDENCE THE GOVERNMENT INTENDS TO OFFER UNDER FEDERAL RULE OF EVIDENCE 404(B).

Federal Rule of Evidence 404(b) requires the government to provide a defendant with reasonable notice of other crimes, wrongs, or acts it intends to introduce at trial.  Specifically, Rule 404(b) provides as follows:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith.  It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, *provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial.*

(emphasis added.)  The pretrial notice requirement of Rule 404(b), highlighted above, was added as part of the 1991 amendments, and "is intended to reduce surprise and promote early resolution on the issue of admissibility."  Comm. Notes to 1991 Amend.  Moreover, "[t]he amendment requires the prosecution to provide notice, regardless of how it intends to use the extrinsic act evidence at trial, *i.e.*, during its case-in-chief, for impeachment, or for possible rebuttal."  *Id.* Finally, the notice provided by the government must "fairly apprise" the defendant of the general nature of the evidence to be introduced and be sufficiently clear as to permit pretrial resolution of any admissibility issues.  *United States v. Barnes*, 49 F.3d 1144, 1148 (6th Cir. 1995).

Here, the need for disclosure is particularly pressing.  The Indictment alleges a conspiracy that spanned several years and, as such, explicitly alludes to conduct beyond the limited time frame of the substantive counts alleged in the Indictment.  Thus, the Indictment at least implies that other acts may be offered in evidence.  The identification and particularization of the specific "other acts" upon which the government intends to rely is required in order for the defense to prepare for trial, to avoid surprise at trial, and to permit the early resolution of any disputes regarding the

admissibility of such evidence.  Accordingly, Court should order the government to provide the defense with 60-days' notice of any Rule 404(b) evidence the government intends to introduce at trial, which is "reasonable" under the circumstances of this case which the government has characterized as complex.  *See United States v. Caruso*, 948 F. Supp. 382, 395-96 (D.N.J. 1996) (Rule 404(b) materials provided 30 days before trial).

## VI.  DEFENDANT BROSIUS JOINS HIS CO-DEFENDANTS' PRETRIAL MOTIONS.

Defendant Brosius joins those pretrial motions filed by his co-defendants that are applicable and relevant to him.

Respectfully submitted,

Mark A. Berman, Esq.
**HARTMANN DOHERTY ROSA
BERMAN & BULBULIA, LLC**
433 Hackensack Avenue, Suite 1002
Hackensack, New Jersey 07601
t) 201-441-9056
e) mberman@hdrbb.com

*Attorneys for Defendant
Adam Brosius*

Dated: December 15, 2021

- 27 -